**Jane DOE, Individually, and on behalf of all others similarly situated, Plaintiff,**

v.

**Edwin A. MUNDY, et al., Defendants.**

No. 74–C–224.

United States District Court,
E. D. Wisconsin.

Sept. 2, 1977.

---

Goldberg, Previant & Uelmen by Walter F. Kelly, Milwaukee, Wis., for plaintiff.

Robert P. Russell, Corp. Counsel, John R. Devitt, Asst. Corp. Counsel, Foley & Lardner by Thomas L. Shriner, Jr., Steven E. Keane, Milwaukee, Wis., for defendants.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

### I. INTRODUCTION

The plaintiffs have brought this action under 28 U.S.C. § 1343 and 42 U.S.C. § 1983 on behalf of themselves and a class, seeking declaratory and injunctive relief against the policy of Milwaukee County General Hospital (MCGH) precluding the performance of elective abortions. Jane Doe I commenced this action, and Jane Doe II subsequently became an additional named plaintiff. Both were pregnant at the time of their entry into this action, and neither had sufficient funds of her own to pay for an abortion. Both sought to obtain publicly financed abortions at MCGH, and both were denied.

The plaintiffs' complaint alleges that the hospital's policy violates their rights to liberty and privacy under the fourth, fifth, ninth, and fourteenth amendments, and their right to the equal protection of the laws under the fourteenth amendment to the United States Constitution. In the course of this litigation, the plaintiffs filed a supplemental complaint which challenged on constitutional grounds two resolutions passed by the Milwaukee County board of supervisors prohibiting the use of county tax funds for the performance of elective abortions. A preliminary injunction was entered by Chief Judge John W. Reynolds on July 24, 1974, against the hospital's policy which is embodied in rule 26(b), rules and regulations of the medical staff, Milwaukee County general hospital. *Doe v. Mundy*, 378 F.Supp. 731 (E.D.Wis.1974). This decision was affirmed on appeal in *Doe v. Mundy*, 514 F.2d 1179 (7th Cir. 1975). The injunctive order was later supplemented to include equitable relief in favor of the plaintiffs against the operation of the two resolutions passed by the board of supervisors. *Doe v. Mundy*, case no. 74–C–224 (E.D.Wis., Nov. 26, 1974). Considerable litigation has ensued regarding the extent of the defendants' compliance with the injunctive orders.

The action has been submitted to me for determination of the merits based on a written record. This record includes the parties' "joint pretrial memorandum and stipulation," extensive briefs, and evidentiary materials, including exhibits and depositions. On June 20, 1977, after such materials had been presented to me, the United States Supreme Court rendered decisions in *Beal v. Doe*, 432 U.S. 438, 97 S.Ct. 2366, 53 L.Ed.2d 464, *Maher v. Roe*, 432 U.S. 464, 97 S.Ct. 2376, 53 L.Ed.2d 484, and *Poelker v. Doe*, 432 U.S. 519, 97 S.Ct. 2391, 53 L.Ed.2d 528. Focussing primarily on the latter two decisions, the defendants then moved to dissolve the preliminary injunctions and asked that this action be dismissed. Both parties have filed comprehensive memoranda on the defendants' recent applications.

This decision shall constitute my findings of fact and conclusions of law in this action. For the reasons stated below, I believe that the preliminary injunctions entered on July 24, 1974, and November 26, 1974, should be vacated and that this action should be dismissed. This decision will also consider some but not all of the other disputed matters which the parties have raised.

## II. STANDING

The defendants argue that the plaintiffs have suffered no injury which may be redressed by enjoining the enforcement of the hospital's rule 26(b), and that they therefore lack standing to prosecute this action.

Rule 26(b) provides in part that "[p]regnancy may be terminated therapeutically if it is complicated by medical conditions of such nature and advanced to such degree that continuation of pregnancy threatens the life of the mother." In this portion of this decision, the term "elective" abortion will refer to any abortion proscribed under rule 26(b). A "therapeutic" abortion is one permitted under rule 26(b). JPMS, p. 2, ¶¶ 1 and 2.

The defendants urge that the plaintiffs' inability to obtain an abortion at MCGH bore no relation to the presence of rule 26(b). Rather, in the defendants' view, Jane Doe I and Jane Doe II were unable to obtain abortions at MCGH because no physician on the staff was willing to perform the operation. It assertedly follows that enjoining the enforcement of rule 26(b) will not result in the presence of physicians at MCGH willing to perform elective abortions.

I find that the plaintiffs do have standing to pursue this action, and I consider the defendants' contrary argument unpersuasive. The order of July 24, 1974, enjoined enforcement of rule 26(b) and also directed the defendants to make the facilities of MCGH available to physicians and other medical personnel willing to perform elective abortions. As subsequent proceedings and orders in this litigation have made clear, this order cast upon the defendants an affirmative obligation to provide facilities and personnel for elective abortions at MCGH or funds for the purchase of elective abortions at private hospitals and clinics for those individuals in the plaintiff class.

## III. CLASS ACTION

Several contentions have been raised regarding the plaintiff class previously certified in this action. In the July 24, 1974, decision, Judge Reynolds defined and certified a plaintiff class comprised of:

". . . all women residents of Milwaukee County who are less than three months' pregnant, who presently desire or will desire in the future to have abortions performed at Milwaukee County General Hospital, who have received doctor's advice to have an abortion performed, and who are presently unable to receive abortions at Milwaukee County General Hospital because of the expressed policies of that hospital concerning 'elective' abortions." *Doe v. Mundy*, 378 F.Supp. at 734.

The defendants argue that the named plaintiffs, Jane Doe I and Jane Doe II, are not members of the class because neither received doctor's advice to have an abortion performed. These contentions have previ-

ously been raised and rejected in a related context before the court of appeals. *Doe v. Mundy*, 514 F.2d at 1182. The defendants have not persuaded me that the findings of the court of appeals are not controlling, and I therefore reject their contention that the plaintiffs are not properly members of the class as presently defined.

Conversely, the plaintiffs suggest that the class be redefined to include individuals in their second trimester of pregnancy who also meet the other criteria for class membership. The complaint was brought by Jane Doe I on behalf of herself and of "all women . . . who are less than six months pregnant. . . ." Judge Reynolds certified a class including only women in their first trimester of pregnancy, which was affirmed by the court of appeals. These determinations apparently rejected the plaintiffs' proposed class definition, and I find no reason to expand the class in the manner advanced at this stage in the litigation.

In addition, the plaintiffs ask that the class be redefined to comprise women with a "medical necessity" for abortions. The defendants oppose this redefinition on the ground that neither of the named plaintiffs had an abortion because of "medical necessity," and therefore neither is a member of such class. The class as previously certified by Judge Reynolds includes women who have obtained a doctor's advice to have an abortion performed and who have satisfied other requirements. The doctor's advice might, of course, be based on "medical necessity" as defined by the plaintiffs (see part IV), or it might be based on other grounds. Because the class as presently defined could thus include women who desire abortions because of medical necessity, I find it unnecessary to amend the class as the plaintiffs request. Since Jane Doe II's physician found it "medically imperative" that she undergo an abortion, *Doe v. Mundy*, 514 F.2d at 1181, the defendants' contention as to class membership does not prevail, at least in her case.

## IV. DISSOLUTION OF THE INJUNCTION AND DISMISSAL

As already noted, rule 26(b) permits the performance of abortions at MCGH only if continuation of a woman's pregnancy constitutes a threat to her life. The county board of supervisors' resolution A prohibits the use of county tax funds for performance of an abortion at MCGH unless continuation of a woman's pregnancy constitutes a threat to her life. Resolution B directs that no county funds be authorized for the performance of an abortion by a private source unless the continuation of a woman's pregnancy constitutes a threat to her life.

The enforcement of rule 26(b) and resolutions A and B were enjoined by orders dated July 24, 1974, and November 26, 1974. The defendants have moved for dissolution of the preliminary injunctions and seek dismissal of this action. The plaintiffs oppose these applications and request comprehensive equitable relief.

In *Maher v. Roe, supra,* and *Poelker v. Doe, supra,* the Supreme Court ruled that the failure of the county or state to fund or provide a pregnant woman with an elective abortion does not deprive her of a fundamental right. Balancing the woman's interest against the legislative decision to favor childbirth, the Court found that limitations on the funding of elective abortions does not violate a pregnant woman's right to equal protection of the laws.

Like the regulations in *Maher* and *Poelker,* rule 26(b) and resolutions A and B represent a decision by the county to provide funds for abortions only in limited circumstances. In *Maher* and *Poelker,* the Supreme Court determined that such limitations do not prohibit a pregnant woman from obtaining an elective abortion via non-publicly financed avenues. The Court held that a pregnant woman has no constitutional right to an elective abortion, but rather only a right to be free from "unduly burdensome interference with her freedom to decide whether to terminate her pregnancy." *Maher v. Roe,* 432 U.S. at 474, 97 S.Ct. at 2382.

While conceding that a woman's indigency may make it difficult, if not impossible, for her to obtain an elective abortion not financed by public means, the Court found that as long as a woman is not precluded by governmental action from choosing to have the operation performed through private sources, she has not suffered the deprivation of a fundamental right. *Maher v. Roe, supra,* 432 U.S. at 473, 97 S.Ct. 2376. The state's decision to withhold funds for elective abortions was thus subject to the "less demanding test of rationality that applies in the absence of . . . impingement of a fundamental right." *Maher, supra,* 432 U.S. at 478, 97 S.Ct. at 2385. Applying this test, the legislative decision to favor childbirth was found sufficient to outweigh the interest to an elective abortion.

Based on *Maher* and *Poelker,* the defendants urge that the county's decision to withhold either the direct funding of abortions or the purchase of such service unless a woman's life is endangered is constitutionally permissible. Conversely, the plaintiffs point to what they consider to be the Court's "careful drafting of the . . . opinions to cover only purely elective abortions." On this basis, they now seek permanent injunctive relief against rule 26(b) and resolutions A and B insofar as they fail to provide for abortions based on "medical necessity," a term assertedly synonymous with "therapeutic" abortions under *Beal, Maher,* and *Poelker.*

In the plaintiffs' opinion, the Supreme Court has defined a therapeutic abortion as one based on "medical necessity." The recent cases assertedly upheld a state's decision to favor "normal childbirth" over elective abortion. However, the plaintiffs propose that the rule and resolutions at issue here still run afoul of the Constitution in permitting funding for abortions only when a woman's life is endangered. This is a narrower definition of therapeutic abortion than what the words "medical necessity" imply in *Maher* or prescribe in *Beal.* The plaintiffs claim that there can be no rational basis for the county's determination not to fund abortions when a woman's

health or "physical integrity" is endangered because of rape or incest or when an infant may be physically or mentally deformed.

The pitfall in the plaintiffs' argument is that the Supreme Court has not restricted its decisions to the upholding of regulations allowing abortion based on medical necessity. Unlike *Maher* and *Poelker, Beal* was decided on statutory grounds; in *Beal* an abortion was defined by regulation as medically necessary when pregnancy could threaten a woman's health, when pregnancy resulted from rape or incest and would constitute a threat to a woman's mental or physical health, and when an infant would possibly be born with an "incapacitating physical deformity or mental deficiency." 432 U.S. at 441, n.3, 97 S.Ct. at 2369, n.3. In *Maher,* the regulation provided funding for medically necessary abortions, a term including psychiatric necessity. 432 U.S. at 466, n.2, 97 S.Ct. 2376. In both of these cases, the Court referred to abortions funded under the regulations as "therapeutic" and abortions not so funded as "elective."

In *Poelker,* it was argued that the refusal of a city-owned hospital to provide the plaintiff an abortion violated her constitutional rights. The plaintiff there was unable to obtain an abortion at the hospital for two reasons. The hospital was staffed by doctors from a nearby Catholic medical school who were opposed to abortion, and a directive from the mayor of the city prohibited abortions at the hospital except in circumstances posing "a threat of grave physiological injury or death to the mother." 432 U.S. at 520, 97 S.Ct. at 2392. The Court found this case "identical in principle" to *Maher* and referred to those abortions not provided by the city hospital as "nontherapeutic." *Poelker, supra,* at 2391. The lower court in *Poelker* noted that the mayor understood his directive to permit abortions "only if the life of the mother was in danger." *Doe v. Poelker,* 515 F.2d 541, 543 (8th Cir. 1975).

The plaintiffs' assertion that the Court carefully defined "therapeutic abortion" coextensively with "medically necessary abor-

tion" does not account for this nonconforming definition of a nontherapeutic abortion in *Poelker*. Instead of deciding, on remand from the Supreme Court, that the hospital had to provide abortions consistent with "medical necessity" as defined in *Maher*, the court of appeals for the eighth circuit vacated its own opinions and affirmed the district court decision which had denied the woman relief. *Doe v. Poelker*, 558 F.2d 1346 (8th Cir. 1977). This fact only underscores the notion that *Beal, Maher,* and *Poelker* declared no constitutional violation in the failure to provide funding for medically necessary abortions.

It follows that the county may choose to fund the medical aspects of childbirth and decline to fund the performance of any abortion which is not required because of a threat to a woman's life imposed by continuation of her pregnancy. Accordingly, I find that the plaintiffs cannot prevail on the merits of their claims that rule 26(b) and resolutions A and B violate the due process or equal protection clauses. The decisions in *Maher* and *Poelker* appear to me inescapably to foreclose these claims.

The preliminary injunctions dated July 24, 1974, and November 26, 1974, will therefore be vacated and this action will be dismissed.

## V. ATTORNEY'S FEES

The plaintiffs seek an award of attorney's fees. This request will not be granted.

■ Under 42 U.S.C. § 1988, as amended by Pub. L. No. 94–559 (December 14, 1976), the court may as a matter of discretion award the prevailing party a reasonable attorney's fee in an action brought under 42 U.S.C. § 1983. Since the plaintiffs have not prevailed in this action, no fee will be awarded to them under § 1988. Nor may attorney's fees be awarded on the basis of any asserted "bad faith" of the defendants. *Poelker v. Doe, supra,* 432 U.S. at 521, n.2, 97 S.Ct. 2391.

■ I also believe it inappropriate to award attorney's fees to the defendants.

Despite the fact that the defendants are the prevailing parties, I decline in the exercise of my discretion to burden the plaintiffs, all individuals of limited means, with the considerable expense of the defendants' fees. For the same reason, I will deny the defendants' request for an award of costs in their favor.

## VI. CONCLUSION

I hereby adopt as part of my findings of fact all stipulations of fact reached by the parties in this action, including those in the "joint pretrial memorandum and stipulation," insofar as they do not conflict with the findings of fact made by me in this decision.

Therefore, IT IS ORDERED that the preliminary injunctions entered in this action on July 24, 1974, and November 26, 1974, be and hereby are vacated forthwith.

IT IS ALSO ORDERED that this action be and hereby is dismissed, without costs.